**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**UNITED STATES OF AMERICA**

**INDICTMENT**

**v.**

4:26cr52-AW

**LEKISHAANN HUGGINS**
**a/k/a "Lekishaann Graham"**
**a/k/a "Lekishaann Barley"**
______________________________/

**THE GRAND JURY CHARGES:**

**COUNTS ONE THROUGH THIRTY-NINE**

**A. INTRODUCTION**

At all times material to this Indictment:

1. The United States Department of Housing and Urban Development ("HUD") administered programs that provided housing and community development assistance. The mission of HUD was to help ensure a fair and equal housing opportunity for all.

2. HUD's Office of the Inspector General ("HUD-OIG") investigated administrative, civil, and criminal matters relating to HUD employees as well as waste, fraud, or abuse of HUD assets and funds. HUD-OIG also provided oversight of Housing Authorities ("HA's"), which were local agencies that managed and operated public housing programs, received funding and guidance from HUD, and which administered federal aid for affordable housing.

FILED USDC FLND TL
JUL 7 '26 PM12:43

3. The Housing Choice Voucher Program ("HCV"), also known as Section 8, was a federal program that provided rental assistance to low-income families, seniors, and people with disabilities, allowing them to find and rent privately owned housing. HCV was administered by HA's using federal funds provided by HUD. HCV participants ("tenants") could choose any eligible housing unit, including single-family homes, townhouses, and apartments.

4. Rent payments for tenants were partially or fully covered by subsidies paid directly to landlords by HA's. These rent payments were made to landlords on behalf of tenants unless a tenant was designated by the HA as being in an "End of Participation" ("EOP") status. Having EOP status meant that a tenant's rental assistance eligibility officially ended because the tenant voluntarily left the HCV, transferred to another municipality's HA ("a port-out"), was terminated from the HCV, or died.

5. The Tallahassee Housing Authority (THA) was an HA and public entity that provided federally subsidized housing and housing assistance to individuals and families within the Tallahassee, Leon County area. In part, THA provided affordable housing for people with low-to-moderate incomes through HCVs. Funding for all THA programs was provided by HUD. THA was headquartered in Tallahassee, Florida. THA used computer software called "Tenmast" to manage tenant and financial data and to produce standard HUD and

agency-specific reports until August 2024, when it transitioned to a different software called "Yardi."

6. Within THA's Tenmast and Yardi systems, tenant profiles contained tenants' personally identifiable information such as names, dates of birth, social security numbers, and system-assigned tenant identification numbers. THA's Tenmast and Yardi systems also included tenants' rental property addresses and the names of their landlord (which was linked to a landlord (owner) profile). The Tenmast and Yardi software included access to pre-existing landlord (owner) profiles from HA clients from across the United States. The landlord (owner) profiles accessible within the Tenmast and Yardi systems contained landlords' financial payment information, such as bank routing and account numbers into which HCV Program rent subsidy payments were deposited and transferred via ACH by THA.

7. Beginning on or about January 27, 2023, until she was suspended on or about January 3, 2025, **LEKISHAANN HUGGINS, a/k/a "Lekishaann Graham," a/k/a "Lekishaann Barley" ("HUGGINS"),** was employed by THA as its HCV Manager. In that role, **HUGGINS** maintained tenant and landlord (owner) records and directed housing assistance payments to landlords using the Tenmast and Yardi systems. Through her position at THA, **HUGGINS** had access to THA tenants' and landlords' personally identifiable information ("PII") and

financial payment information contained within THA's Tenmast and Yardi systems. Further, **HUGGINS's** position with THA provided her with the unique ability as a "super user" within the Tenmast and Yardi systems to create and make changes to tenant and landlord records and to complete and approve EOP's and port-out's. Specifically, **HUGGINS** had the ability to conduct "owner change transactions" in THA's Tenmast and Yardi system, whereby she could change bank account information for landlords (owners).

8. Cache Kloset, LLC, was Florida limited liability company that purportedly sold clothing online. **HUGGINS** was the owner and registered agent of Cache Kloset, LLC.

9. Wells Fargo Bank, N.A. (hereinafter "Wells Fargo") was a financial institution headquartered in Sioux Falls, South Dakota, the deposits of which were insured by the Federal Deposit Insurance Corporation. Wells Fargo offered savings and checking accounts, and credit and debit cards to its customers.

10. THA owned and controlled a Wells Fargo business bank account ending in 6605. **HUGGINS** owned and controlled a Wells Fargo business bank account ending in 5219 in the name of Cache Kloset, LLC, and a Wells Fargo personal bank account ending in 0226.

## B. THE CHARGE

Between on or about May 1, 2023, and on or about January 3, 2025, in the Northern District of Florida and elsewhere, the defendant,

**LEKISHAANN HUGGINS,**
**a/k/a "Lekishaann Graham,"**
**a/k/a "Lekishaann Barley,"**

did knowingly and willfully execute and attempt to execute a scheme to obtain moneys and funds owned by and under the custody and control of Wells Fargo, a federally insured financial institution, by means of material false and fraudulent pretenses, representations, and promises.

## C. THE FRAUDULENT SCHEME

It was part of the scheme to defraud that:

1. Using her position at THA, **HUGGINS** fraudulently edited the existing landlord (owner) profile for "Cache LLC," an entity located in Silver Spring, Maryland, which was accessible using the Tenmast software. In doing so, **HUGGINS** fraudulently changed the bank routing and account numbers associated with the landlord (owner) profile for "Cache LLC" to the Wells Fargo business account of her business, Cache Kloset, LLC, and to her personal Wells Fargo account. This updated and false information was automatically migrated into THA's Yardi system during its transition from Tenmast.

2. **HUGGINS** fraudulently elected to not change the EOP status designations and voided correct EOP status designations of sixteen former THA tenants within the Tenmast and Yardi systems, which falsely portrayed the former tenants as being eligible for HCV rent subsidies so HUGGINS could redirect the funds to herself.

3. **HUGGINS** fraudulently changed the landlord (owner) profile linked to these sixteen former THA tenants within the Tenmast and Yardi systems to reflect "Cache LLC" (with **HUGGINS's** Wells Fargo bank account information) as their current landlord. In doing so, **HUGGINS** fraudulently caused THA to make HCV rent subsidy payments into her Wells Fargo business bank account ending in 5219 and Wells Fargo personal bank account ending in 0226 going forward.

4. **HUGGINS** backdated the effective date of the change in landlord (owner) to fraudulently cause one or more months of HCV rent subsidies to be paid by THA into her Wells Fargo business bank account ending in 5219 in the name of Cache Kloset, LLC, and her personal Wells Fargo bank account ending in 0226. At no time did **HUGGINS** or Cache Kloset, LLC, act as a landlord or provide housing to any tenants.

5. After receiving the fraudulently obtained funds from THA, **HUGGINS** withdrew some of the proceeds in cash and transferred some of the

proceeds between her bank accounts. **HUGGINS** ultimately spent the fraudulently obtained funds to sustain her luxurious lifestyle, which included taking vacations, buying luxury apparel and jewelry, and having a celebrity chef cater her private Christmas party.

6. As a result of her scheme to defraud, **HUGGINS** received over $378,000 in fraudulently obtained HUD and THA funds to which she was not entitled.

## D. EXECUTION OF THE SCHEME

On or about the following dates, for the purpose of executing and attempting to execute this fraudulent scheme, the defendant did knowingly conduct and cause, and attempted to conduct and cause, the following transactions involving funds owned by and under the custody and control of Wells Fargo:

| COUNT | DATE | TRANSACTION(S) |
|---|---|---|
| ONE | July 17, 2023 | $11,100 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 0226 |
| TWO | August 1, 2023 | $9,885 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| THREE | September 1, 2023 | $11,678 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| FOUR | October 4, 2023 | $11,040 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |

| COUNT | DATE | TRANSACTION(S) |
|---|---|---|
| FIVE | November 1, 2023 | $1,935 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| SIX | December 1, 2023 | $4,125 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| SEVEN | December 20, 2023 | $5,560 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| EIGHT | January 3, 2024 | $1,750 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| NINE | January 16, 2024 | $3,336 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| TEN | February 1, 2024 | $12,850 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| ELEVEN | March 1, 2024 | $9,170 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| TWELVE | April 1, 2024 | $11,287 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| THIRTEEN | April 11, 2024 | $1,486 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| FOURTEEN | May 1, 2024 | $14,996 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| FIFTEEN | June 3, 2024 | $10,732 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| SIXTEEN | June 7, 2024 | $1,919 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |

| COUNT | DATE | TRANSACTION(S) |
|---|---|---|
| SEVENTEEN | June 13, 2024 | $6,902 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| EIGHTEEN | July 2, 2024 | $27,891 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| NINETEEN | August 1, 2024 | $28,272 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| TWENTY | September 6, 2024 | $10,300 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| TWENTY-ONE | September 23, 2024 | $1,500 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| TWENTY-TWO | September 30, 2024 | $4,500 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| TWENTY-THREE | October 1, 2024 | $5,301 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| TWENTY-FOUR | October 4, 2024 | $3,216 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| TWENTY-FIVE | October 10, 2024 | $8,950 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| TWENTY-SIX | October 15, 2024 | $9,686 ACH transfer from Wells Fargo Account ending in 6605 into Wells Fargo account ending in 5219 |
| TWENTY-SEVEN | October 17, 2024 | $5,944 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| TWENTY-EIGHT | October 18, 2024 | $9,250 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |

| COUNT | DATE | TRANSACTION(S) |
|---|---|---|
| TWENTY-NINE | October 31, 2024 | $4,044 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| THIRTY | November 1, 2024 | $5,301 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| THIRTY-ONE | November 13, 2024 | $6,768 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| THIRTY-TWO | November 19, 2024 | $29,472 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| THIRTY-THREE | November 22, 2024 | $27,255 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| THIRTY-FOUR | November 25, 2024 | $12,375 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| THIRTY-FIVE | November 26, 2024 | $15,400 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| THIRTY-SIX | December 2, 2024 | $14,728 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| THIRTY-SEVEN | December 6, 2024 | $2,820 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| THIRTY-EIGHT | December 12, 2024 | $12,926 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |
| THIRTY-NINE | December 17, 2024 | $3,240 ACH transfer from Wells Fargo account ending in 6605 into Wells Fargo account ending in 5219 |

In violation of Title 18, United States Code, Sections 1344(2) and 2.

**COUNT FORTY**

Between on or about May 1, 2023, and on or about January 2, 2025, in the Northern District of Florida and elsewhere, the defendant,

**LEKISHAANN HUGGINS,**
**a/k/a "Lekishaann Graham,"**
**a/k/a "Lekishaann Barley,"**

did knowingly possess and use, without lawful authority, a means of identification of another person, to wit, the name, date of birth, social security number, and tenant identification number of the following individuals, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), that is, bank fraud, in violation of 18 U.S.C. Sections 1344 and 2, as alleged in Counts One through Thirty-Nine of this Indictment, as follows:

| INDIVIDUAL | AS ALLEGED IN |
|---|---|
| T.W. | Count One; |
| C.C. | Count Two; |
| C.B., C.C. | Count Three; |
| C.B. | Count Four; |
| C.C. | Count Five; |
| N.J., C.C. | Count Six; |
| N.J. | Count Seven; |
| C.C., N.J. | Count Eight; |
| N.J. | Count Nine; |
| N.J., T.W., C.C. | Count Ten; |
| C.C., N.J., T.W. | Count Eleven; |
| N.J., T.W. | Count Twelve; |
| C.C. | Count Thirteen; |
| N.J., J.M., N.K., T.W., C.C. | Count Fourteen; |
| N.J., J.M., N.K., T.W., C.C. | Count Fifteen; |

| INDIVIDUAL | AS ALLEGED IN |
|---|---|
| C.C., N.K. | Count Sixteen; |
| N.K. | Count Seventeen; |
| C.C., N.J., N.K., J.M., T.W. | Count Eighteen; |
| C.C., J.M., T.W., N.K., N.J. | Count Nineteen; |
| C.C., T.W., J.M., N.K. | Count Twenty; |
| N.J. | Count Twenty-One; |
| N.J. | Count Twenty-Two; |
| C.C., T.W., N.J., J.M., N.K. | Count Twenty-Three; |
| C.C. | Count Twenty-Four; |
| T.W., J.M. | Count Twenty-Five; |
| C.C., J.M. | Count Twenty-Six; |
| C.C. | Count Twenty-Seven; |
| T.W. | Count Twenty-Eight; |
| N.K. | Count Twenty-Nine; |
| N.C. | Count Thirty; |
| C.C., T.W., N.J., J.M., N.K. | Count Thirty-One; |
| K.D., C.D. | Count Thirty-Two; |
| N.C., K.D., C.D. | Count Thirty-Three; |
| L.B. | Count Thirty-Four; |
| B.D. | Count Thirty-Five. |
| C.C., T.W., J.M., N.C., B.D., L.B., K.D., F.C., C.D., N.K. | Count Thirty-Six; |
| A.C. | Count Thirty-Seven; |
| K.S., C.D. | Count Thirty-Eight; and |
| A.B. | Count Thirty-Nine. |

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

**COUNTS FORTY-ONE THROUGH FORTY-FOUR**

On or about the dates listed below, in the Northern District of Florida, the defendant,

**LEKISHAANN HUGGINS,**
**a/k/a "Lekishaann Graham,"**
**a/k/a "Lekishaann Barley,"**

did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, namely, the withdrawal, deposit, and transfer of funds and monetary instruments, as identified below, such property having been derived from a specified unlawful activity, to wit, bank fraud, in violation of Title 18, United States Code, Section 1344, as charged in Counts One through Thirty-Nine of this Indictment:

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| FORTY-ONE | November 22, 2024 | Transfer of $17,000 from Wells Fargo account ending in 5219 to Wells Fargo account ending in 0226 |
| FORTY-TWO | November 25, 2024 | Debit card purchase in the amount of $13,738.50 to Gucci America, Inc. (“Gucci”) |
| FORTY-THREE | December 20, 2024 | Withdrawal of $11,000 from Wells Fargo account ending in 5219 |
| FORTY-FOUR | December 30, 2024 | transfer of $10,632.45 from Wells Fargo account ending in 5219 to Wells Fargo account ending in 0226 |

In violation of Title 18, United States Code, Section 1957.

**COUNT FORTY-FIVE**

On or about February 13, 2024, in the Northern District of Florida, the defendant,

**LEKISHAANN HUGGINS,**
**a/k/a "Lekishaann Graham,"**
**a/k/a "Lekishaann Barley,"**

a resident of Tallahassee, Florida, did willfully make and subscribe a United States Individual Income Tax Return, Form 1040, for the calendar year 2023, which was filed with the Internal Revenue Service and contained and was verified by a written declaration that it was made under the penalties of perjury, and which the defendant did not believe to be true and correct as to every material matter, in that the return represented a total income of $81,991.00, when, in truth and fact and as the defendant then well knew, her total income for the calendar year 2023 was in excess of that amount.

In violation of Title 26, United States Code, Section 7206(1).

**COUNT FORTY-SIX**

On or about February 7, 2025, in the Northern District of Florida, the defendant,

**LEKISHAANN HUGGINS,**
**a/k/a "Lekishaann Graham,"**
**a/k/a "Lekishaann Barley,"**

a resident of Tallahassee, Florida, did willfully make and subscribe a United States Individual Income Tax Return, Form 1040, for the calendar year 2024, which was filed with the Internal Revenue Service and contained and was verified by a written declaration that it was made under the penalties of perjury, and which the defendant did not believe to be true and correct as to every material matter, in that the return represented a total income of $88,369.00, when, in truth and fact and as the defendant then well knew, her total income for the calendar year 2024 was in excess of that amount.

In violation of Title 26, United States Code, Section 7206(1).

## CRIMINAL FORFEITURE

The allegations in Counts One through Thirty-Nine, and Forty-One through Forty-Four of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture. From the defendant's engagement in the violations alleged in One through Thirty-Nine, and Forty-One through Forty-Four of this Indictment, the defendant,

**LEKISHAANN HUGGINS,**
**a/k/a "Lekishaann Graham,"**
**a/k/a "Lekishaann Barley,"**

shall forfeit to the United States of America:

(A) pursuant to Title 18, United States Code, Section 982(a)(2) and Title 28, United States Code, Section 2461(c), upon conviction of an offense in violation

of Title 18, United States Code, Sections 1344, any and all of the defendant's right, title, and interest in any property, real and personal, constituting and derived from proceeds traceable to such offenses; and

(B) pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1957, any and all of the defendant's right, title, and interest in any property, real and personal, involved in such offenses, and any property traceable to such property.

The United States will also seek a forfeiture money judgment for a sum of money equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, and to the value of any property, real and personal, involved in such offenses, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

1. Louis Vouitton apparel and accessories, including purses, handbags, and wallets,
2. Gucci apparel and accessories, including shirts, pants, hats, belts, scarves, purses, handbags, and wallets,
3. Michael Kors purses, handbags, luggage, belts, and shoes,
4. Jimmy Choo purses, handbags, and shoes,
5. Tory Burch purses and handbags,
6. Coach purses, handbags, and shoes,

7. Dolce & Gabbana apparel and accessories, including shoes,
8. Dooney & Burke purses, handbags, and wallets,
9. Jewelry, including rings, necklaces, earrings, and cufflinks, and
10. Multiple watches.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

i. cannot be located upon the exercise of due diligence;

ii. has been transferred or sold to, or deposited with, a third person;

iii. has been placed beyond the jurisdiction of this Court;

iv. has been substantially diminished in value; or

v. has been commingled with other property that cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by reference in Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

A TRUE BILL:

Redacted

7/7/2026

DATE

JOHN P. HEEKIN
United States Attorney

JUSTIN M. KEEN
Assistant United States Attorney